BURT'S WRECKER SERVICE, INC., and William Wilson, Appellants (Defendants Below),

v.

Wesley J. EUSEY and Helen M. Eusey, Appellees (Plaintiffs Below).

No. 2–483 A 138.

Court of Appeals of Indiana, Second District.

June 7, 1984.

---

George E. Purdy, Van Valer, Wicker & Williams, Greenwood, for appellants.

W. Brent Threlkeld, Martz & Threlkeld, Harry K. Wick, Wick, White & Lunn, Indianapolis, for appellees.

SHIELDS, Judge.

Burt's Wrecker Service, Inc., and William Wilson (jointly referred to as "Burt's") appeal the trial court's grant of a new trial to Wesley H. Eusey (Eusey) and Helen M. Eusey (jointly referred to as "Euseys").

We affirm.

The Euseys brought an action against Burt's for damages resulting from an automobile collision in which Eusey was injured. William Wilson was driving a tow truck owned by Burt's Wrecker Service, Inc., when he struck Eusey's car in the rear. Burt's alleged Eusey was contributorily negligent because his brake lights and turn signals were not operating. The case was tried before a jury which rendered a verdict in favor of Burt's.

At trial, Eusey testified that he had on several occasions sought treatment for his injuries related to the collision from Dr. Thomas M. Brogan at Dr. Brogan's office. The trial court allowed Burt's on cross-examination to ask Eusey, over objection, whether he agreed or disagreed with a statement appearing in a document attached to Eusey's interrogatories. The document purportedly was a report under the signature of Dr. Brogan which recited he had not seen Eusey at his office for the injuries that were the subject of the instant suit. Dr. Brogan did not testify at the trial.

The Euseys filed a motion to correct error asserting, *inter alia*, the trial court erred in permitting Burt's to cross-examine Eusey by using information from Dr. Brogan's report, because the report was hearsay. The trial court agreed and granted a new trial.[1] Burt's appeals that order.

---

1. In its Entry granting Eusey's motion to correct error, the trial court stated:

"There was an uncorrected error of law which occurred at the trial herein, which error was properly raised at trial, and which error was prejudicial and harmful to Plaintiffs, namely, that Defendants were permitted to cross-examine Jim Eusey, over objection of Plaintiffs, by reading from a medical report prepared by Dr. Tom Brogan. Such report was hearsay, and did not constitute an admission, since the words of such report were not the words of Jim Eusey, nor can Plaintiff's conduct in providing such report to Defendants in discovery be said to constitute an admission. Further, such report did not constitute a judicial admission, as it was not attached to or incorporated in the pleadings, which are the allegations made for the purpose of definitely presenting the issue or issues to be tried and determined. (*Seastrom, Inc. v. Amick Construction Co., Inc.,* 1974, 159 Ind.App. 266, 306 N.E.2d 125, 127) Such report contradicted the testimony of Plaintiff, Jim Eusey, and had a prejudicial and harmful effect on his credibility on that factual matter

The initial issue before us is whether the trial court erred in overruling Euseys' objection to the question concerning Dr. Brogan's report propounded to Eusey on cross-examination. Burt's argues the Brogan statement constitutes an adoptive admission by Eusey and, therefore, was admissible both as impeaching and substantive evidence. Eusey counters with the argument the Brogan statement is inadmissible hearsay.

■ The statement is inadmissible hearsay. It does not qualify as an adoptive admission because Eusey did not deal with the written statement in a manner that his assent to its correctness may be inferred.[2]

A party's use of a document made by a third party may amount to an approval of its contents as correct and thus it may be received against him as an admission by adoption. 4 *Wigmore, Evidence* § 1073 (Chadbourne Rev.1972).

Examples of use sufficient to infer approval and thereby to qualify as an adoptive admission include a physician's statement as to the insured's cause of death submitted as proof of death to insurer by beneficiary, *Haughton v. Aetna Life Insurance Co.*, (1905) 165 Ind. 32, 73 N.E. 592, an accountant's statement of financial status submitted by parties in support of a loan application, *Courtney v. Courtney*, (1975) Alaska, 542 P.2d 164, and a statement of assets used in preparing a registration statement for the Securities and Exchange Commission, *Oxley v. Linnton*

*Plywood Association*, (1955) 205 Or. 78, 284 P.2d 766. A common thread in these cases is the voluntary use of the third-party statement, for his own purpose, by the party against whom the third-party statement is offered, in a transaction unrelated in subject and parties to the litigation in issue.[3]

■ Eusey did not make use of the Brogan statement voluntarily and in an unrelated transaction. To the contrary, rather than specifically describing the reports of any physicians he had received regarding his medical condition, as requested in an interrogatory propounded to him by Burt's, he supplied the reports. The reports, including Dr. Brogan's, were clearly discoverable upon a request for their production. Had they been so supplied the coerciveness of a request for production would prohibit their production as constituting a use such that their correctness could be inferred. To deny Eusey similar protection because he produced Dr. Brogan's report in response to the interrogatory would constitute an indefensible deference to form over substance. A contrary result would have a chilling effect upon, if not defeat entirely, the discovery process.

We therefore conclude Dr. Brogan's statement does not constitute an adoptive admission.[4] It was hearsay. As such it was not admissible as substantive evidence. Furthermore, it was not admissible for impeachment purposes. Quite frequently, a

---

and on the remainder of his testimony. For this reason, it would be unfair to Plaintiffs not to allow a new trial."
Record at 240–241.

2. The statement is also not an admission by pleading. A party's response to motions are not pleadings and cannot be considered as admissions in a pleading. *Smith v. City of South Bend*, (1980) Ind.App., 399 N.E.2d 846.

3. *Gridiron Steel Co. v. Jones & Laughlin Steel Corp.*, (6th Cir.1966) 361 F.2d 791, cited by Burt's, is not in conflict with this analysis because there the evidence was received without objection and further, it appears the third-party appraisal of equipment was used by the party against whom it was offered in connection with its purchase of the equipment.

4. Even if the statement were the statement of a party, it would not constitute an admission. In *Smith v. City of South Bend*, (1980) Ind.App., 399 N.E.2d 846, referring to responses to motions to produce, this court said:

"Ind.Rules of Procedure, Trial Rule 34 is a vehicle for inspecting and copying documents and other tangible things. It serves as a device to ascertain items that might be admissible evidence for a party or lead to admissible evidence or otherwise assist in the preparation of the trial. However, it was not intended that the motions and replies themselves would be evidence particularly in the factual context here."
399 N.E.2d at 850.

prior inconsistent statement of a witness sought to be impeached is hearsay in the sense it is an out-of-court statement. However, because it is not offered for the truth of the statement when offered for impeachment purposes, it may be admissible. However, that principle does not serve to benefit Burt's because Dr. Brogan's statement is not a prior inconsistent statement of Eusey. Eusey cannot be impeached by the statement of a third person. Consequently, the trial court was correct in its determination that it erroneously admitted evidence of Dr. Brogan's statement.

The second issue, then, is whether the trial court abused its discretion in concluding the erroneously admitted evidence had a prejudicial and harmful effect on Eusey's credibility vis-a-vis his entire testimony. Burt's argues the error is harmless because of its evidence of Eusey's contributory negligence and Eusey's other evidence of injury. We disagree with Burt's argument that Eusey's credibility before the jury was not so irreparably damaged as to have an impact upon substantial justice or his substantial rights.

In this instance, the issue of substantial justice and rights involves a determination of the impact and influence the impeaching evidence had upon the jury in its function of weighing the evidence and determining the credibility of a witness, the plaintiff, Mr. Eusey. If he would lie about visiting a physician for treatment of his injuries, would he not also lie about his injuries, and indeed, about how the accident itself occurred? Is that not the reason for offering impeaching evidence, to in fact cast doubt on all testimony of the witness? If that is so, this court is not in a position, by reviewing a cold record, to evaluate the impact and influence of the erroneously received evidence (except perhaps, where the evidence on the merits of the case is overwhelmingly in favor of one party). Certainly, this court is not in as good position as is the trial court to make that determination. The trial judge is present in the courtroom, hearing the case along with the jury, with the opportunity to see and know the jury and to observe the manner in which the jury receives particular evidence. This is the same trial judge who is given the responsibility of a thirteenth juror and to whom we show such deference in ruling on a motion for mistrial, which, after all, involves an evaluation of the impact and influence upon a jury of inadmissible evidence. This is the trial judge who bears the awesome responsibility of serving as a safeguard of the right to trial by jury by "warranting that the jury system does not become a whimsical tool without restraint." *Memorial Hospital v. Scott,* (1973) 261 Ind. 27, 33, 300 N.E.2d 50, 54.

Thus, we disagree with the dissenting opinion's position that based upon Eusey's rehabilitative evidence, the trial judge's determination constitutes an abuse of discretion or a flagrant injustice to Burt's. All rehabilitative evidence came from Eusey himself. Can a "liar" realistically rehabilitate himself in the eyes of the jury by more words from his own mouth or documents from his own hands? Such is a possibility, certainly, but again, the trial judge deemed Eusey could not; from the cold record, a record which contains conflicting evidence, basically from the mouths of the parties, we can not disagree with the trial court's decision.

Accordingly, we defer to the trial judge's determination that:

"[The] report contradicted the testimony of Plaintiff, Jim Eusey, and had a prejudicial and harmful effect on his credibility on that factual matter *and on the remainder of his testimony.*" (emphasis added)

Record at 241.

The trial court's grant of a new trial is affirmed.

BUCHANAN, C.J., concurs.

CONOVER, J., dissents, with opinion.

CONOVER, Presiding Judge, dissenting.

I respectfully dissent.

Eusey has correctly cited *Huff v. Travelers Indemnity Co.,* (1977) 266 Ind. 414, 363

N.E.2d 985, for our standard of review in this case. There the court stated:

> The "trial court's action in granting a new trial is given a *strong* presumption of correctness" on appellate review. *Memorial Hospital v. Scott* (1973), 261 Ind. 27, 31, 300 N.E.2d 50, 53. The inquiry of an appellate court is to examine the record to determine whether:
>
> (a) The trial court abused its judicial discretion;
>
> (b) A flagrant injustice has been done the appellant; or
>
> (c) A very strong case for relief from the trial court's ordering a new trial has been made by the appellant. *Memorial Hosp. v. Scott, supra.*

*Id.*, 266 Ind. at 428–29, 363 N.E.2d at 994. In my opinion the court erred in granting a new trial in this case because the error, if any, in admission of the Brogan report was harmless.

While Ind.Rules of Procedure, Trial Rule 59(F) provides for relief where prejudicial or harmful error has occurred, *cf.* A.R. 15(N), T.R. 61 regarding harmless error provides

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Eusey argues the decision of the trial court should be upheld because admission of the report before the jury irreparably damaged his credibility as a witness. The record, however, does not support this contention.

After the report was admitted, Eusey testified he honestly believed he had seen Brogan, who had been his personal physician for some time, for injuries stemming from the accident. Eusey stated, "I have records of paying him for a visit." (R. 339) Eusey also testified he had seen six other professionals for these injuries, testified as to the specific dates of many of these appointments, and detailed his expenses of treatment. (R. 268–95) Eusey also described his emergency treatment at the hospital, the effect of his injuries on his ability to operate his business, and his constant pain.

While we are mindful of our duty not to reweigh evidence, the most the record demonstrates here is the raising of an issue of fact as to whether Brogan treated Eusey for injuries specifically resulting from the automobile accident. Eusey's testimony of his medical history following the accident and visits with other medical professionals was well-documented. Eusey's credibility before the jury was not so irreparably damaged as to have been inconsistent with substantial justice, nor to have affected his substantial rights.

Assuming for our purposes admission of the report was error, we find Judge Ratliff's analysis in *Oliver v. Morrison*, (1982) Ind.App., 431 N.E.2d 140 persuasive on this issue:

> We have determined that Oliver has made a compelling case for relief from the obvious injustice which has been done him by virtue of the special judge's ordering a new trial. Although the trial judge committed certain errors … there is no reasonable indication that those errors affected the jury's verdict and prejudiced Morrison's case. Only by speculation could the special judge have concluded that the verdict would be significantly different after a new trial.

*Id.*, 431 N.E.2d at 147.

Because the error, if any, in admitting the Brogan report was harmless as a matter of law, the trial court abused its discretion in granting a new trial.

I would reverse with instructions to reinstate the judgment entered on the jury's verdict.