MARGARET L. HUFF *v.* TRAVELERS INDEMNITY COMPANY.

[No. 677S451. Filed June 22, 1977.]

*Harry V. Huffman,* of Indianapolis, *Bobby Jay Small,* of counsel, of Indianapolis, for appellant.

*Timothy W. Woods,* of South Bend, for appellee.

HUNTER, J.—Margaret Huff made a claim against Travelers Indemnity Company for freezing damage to her home which was covered by a homeowner's insurance policy issued by Travelers. The claim was denied and Huff brought suit on the policy. After trial, a jury returned a verdict for $6,000 in Huff's favor. Travelers moved for judgment on the evidence in its motion to correct errors. The trial court granted the motion and entered judgment for Travelers. From the memorandum in support of his order, it is apparent that the trial court entered judgment for Travelers on the basis that the jury verdict was clearly erroneous on the issue of waiver and estoppel as to certain provisions of the policy. The court also found that a new trial was merited, the weight of the evidence favoring Travelers on the issue of due diligence. Huff appealed and the Court of Appeals affirmed the trial court's

decision. *Huff* v. *Travelers Indemnity Co.*, (1975) Ind. App., 328 N.E.2d 430, rehearing denied, Ind. App., 333 N.E.2d 786.

## I. *Amended Answer*

On February 28, 1972, Huff filed her complaint against Travelers. On March 27, 1972, Travelers filed its original answer denying certain paragraphs and affirmatively pleading that the insured "did not exercise due diligence to protect the property from loss." On July 30, 1972, Huff's husband died; he was also a plaintiff at the inception of this action. Travelers thereafter sought a summary judgment on February 23, 1973, raising for the first time that the insured had failed to comply with conditions precedent to the policy. The only condition specified was a twelve-month limitation on the bringing of suit. Huff moved to strike this motion on the grounds that the limitation was an affirmative defense not pleaded. Subsequently, Travelers sought to amend its answer on April 2, 1973. The amended answer asserted Huff's failure to give immediate written notice, failure to provide an inventory of the loss, failure to give a verified proof of loss within sixty days and failure to bring suit within twelve months of the loss. A hearing was held on the motion for summary judgment, the motion to amend and on Huff's motion to strike the motion for summary judgment. Subsequent to this hearing the trial court denied Travelers' motion for summary judgment and granted its motion to amend the answer.

The Court of Appeals ruled that any error in permitting the amended answer was not preserved for appeal by Huff since no objection to the motion was made by her. We agree with the Court of Appeals opinion on rehearing that even construing Huff's motion to strike and the affidavit of Travelers' local agent as a sufficient objection, the trial court did not abuse its discretion in permitting the amended answer.

Ind. R. Tr. P. 15 (A) provides that pleadings may be amended once as a matter of course within thirty days after service

of the pleading. Otherwise, and of greater moment to this case, amendment is allowed only by consent of the parties or by leave of court, and "leave shall be given when justice so requires." In its decisions on whether to permit amendments to pleadings, the trial court is vested with a broad discretion. *Selvia* v. *Reitmeyer*, (1973) 156 Ind. App. 203, 295 N.E.2d 869; Civil Code Study Commission Comments in 2 Harvey, Indiana Practice 121 (1970). The policy generally and in this state is liberally to allow the amendment of pleadings, *Higgins* v. *Swygman*, (1923) 194 Ind. 1, 141 N.E. 788, and leave to amend should be given unless the amendment will result in prejudice to the opposing party.

> "Whether the amendment will result in prejudice to a party is of prime consideration in determining a motion for leave to amend. . . .
>
> ". . . Indeed, unless there are complications arising by virtue of the statute of limitations, an amendment to the complaint may introduce a new or different claim." Harvey, *supra*, at 130.

Huff contends that she has been prejudiced by permitting Travelers' answer to be amended after the death of her husband. She states that since her husband died after the original answer and before the amended answer, there was an irretrievable loss of evidence with which to contradict the new defenses, much of the negotiation carried on with the local agent being done by her husband. Assuming that Huff's husband was possessed of evidence vital to her case, we cannot see how she is specifically prejudiced by the amendment of the answer. His testimony would seem to be equally material to a trial of this case regardless of the amendment. And it would seem that if a deposition had been possible, if, for example, her husband were known to be a "going" witness, it would have been taken even if there were no amendment. Huff is no more prejudiced by the amendment than is anyone whose evidence disappears and is unable to refute a defense. There is no showing of any bad faith delay on the part of the defendant. Neither has Huff

shown that anything could have been done by way of deposing Mr. Huff as a witness had a prompt answer preceded his death. The same reason to depose him existed prior to the amendment. The trial court did not exceed its discretion in permitting Travelers to amend its answer.

## II. *Judgment on the Evidence*

Travelers moved for judgment on the evidence in its motion to correct errors, as provided for by Ind. R. Tr. P. 50(A)(4). Our rule governing the trial court's review of the evidence when considering a motion to correct errors provides:

> "In reviewing the evidence, the Court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; *and shall enter judgment,* subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is *clearly erroneous as contrary to or not supported by the evidence,* or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence." Ind. R. Tr. P. 59(E)(7) [emphasis added].

Similarly, our rule concerning judgments on the evidence provides:

> "Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is *clearly erroneous as contrary to the evidence because the evidence is insufficient to support it,* the court shall withdraw such issues from the jury and enter judgment thereon or *shall enter judgment thereon notwithstanding a verdict."* Ind. R. Tr. P. 50(A) [emphasis added].

Both of these rules apply to the same situation commonly known as a judgment, notwithstanding the verdict. The Court of Appeals found that there was a difference between the standard employed by the trial court on a Ind. R. Tr. P. 50 motion and a Ind. R. Tr. P. 59 motion, stating with regard to the Ind. R. Tr. P. 59 motion, "On the other hand, when there is some evidence to support the jury's ver-

dict, the trial court must determine if the jury's verdict is supported by sufficient evidence without weighing the evidence or judging the credibility of the witnesses." *Huff, supra,* at 433. There is certainly a difference in the language of Ind. R. Tr. P. 50[1] and Ind. R. Tr. P. 59.[2] However, both rules apply where a judgment on the evidence is sought after the jury's verdict, since after the jury's verdict the motion may only be made in a motion to correct errors. Ind. R. Tr. P. 50(A). Although the language differs in the two, both rules mandate that the motion be granted when there is insufficient evidence under the law to support a verdict.

When the trial court is considering a motion for judgment on the evidence subsequent to the jury's verdict, it must view only the evidence favorable to the non-moving party and the reasonable inferences to be drawn from that evidence. The trial court may enter judgment only *if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim,* i.e., the evidence must point unerringly to a conclusion not reached by the jury. *McCague* v. *New York, Chicago & St. Louis R. R.,* (1946) 225 Ind. 83, 71 N.E.2d 569, 73 N.E.2d 48. This is the same standard which applies to a motion for judgment made at the conclusion of the evidence, i.e., there must be a complete failure of proof.

"It is only where there is a total absence of evidence or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant. . . ." *Hendrix* v. *Harbelis,* (1967) 248 Ind. 619, 230 N.E.2d 315; *accord, Vernon Fire & Cas. Ins. Co.* v. *Sharp,* (1976) 264 Ind. 599, 349 N.E.2d 173; *Miller* v. *Griesel,* (1974) 261 Ind. 604, 308 N.E.2d 701.

If there is relevant evidence which supports the verdict, then the motion may not properly be granted because evidence

1. "[C]learly erroneous as contrary to the evidence because the evidence is insufficient to support it. . . ."

2. "[C]learly erroneous as contrary to or not supported by the evidence. . . ."

which supports the verdict is sufficient evidence, and the final determination is left to the fact finder. This is not the scintilla rule. A scintilla is by definition barely perceptible and would not support a reasonable inference. Judicial economy is served by this view in that the trial court withdraws the case from the jury or enters a judgment notwithstanding the verdict whenever an appellate court would be compelled to find the evidence does not support a judgment. *McCague, supra; Culp v. Burkle,* (1946) 224 Ind. 552, 69 N.E.2d 169; *Beaman v. Hedrick,* (1970) 146 Ind. App. 404, 255 N.E.2d 828. The trial court may not weigh the evidence when considering whether to enter judgment contrary to the verdict. If the trial court is convinced that the weight of the conflicting evidence preponderates against the jury's verdict, he should order a new trial. See Part V of this opinion. Our review of the trial court's entering judgment notwithstanding the verdict is whether there was evidence of probative value to support each essential element of the plaintiff's claim. If the evidence was conflicting, but there was relevant evidence to support the claim, then judgment was improperly granted in favor of the defendant.

### III. *Twelve-Month Limitation and Proofs of Loss*

The homeowner's policy purchased by Margaret Huff contained a provision that no action on the policy could be sustained unless commenced within twelve months after the loss. Another provision required the insured to give immediate written notice followed within sixty days by a signed and sworn proof of loss including an inventory of all damaged property, together with a statement of the actual value of the damaged property.

The loss, which is the subject of this suit, occurred in February, 1970. No written notice or verified proof of loss was given to Travelers. Suit was commenced February 28, 1972, two years after the loss was sustained. Admitting that the provisions were not complied

with, Huff maintains that there was evidence from which the jury could find that Travelers had waived the limitation period and the requirement of written notice and proof of loss. Travelers contends that the issues of waiver and estoppel are lost to the appellant since neither theory was specially pleaded, citing *Emmco Ins. Co.* v. *Pashas,* (1967) 140 Ind. App. 544, 224 N.E.2d 314. However, evidence was admitted and the trial court's memorandum in support of its granting judgment to Travelers dealt specifically with both theories "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Ind. R. Tr. P. 15(B).

As to the limitation period, contractual limitations on the bringing of actions, such as that involved here, are valid, although not a favorite of the law. *Caywood* v. *Supreme Lodge,* (1908) 171 Ind. 410, 86 N.E. 482. An insurer may be estopped from asserting or waive such a provision.

"The conduct or acts on the part of the insurer or its authorized agents must be sufficient to justify a reasonable belief on the part of the insured that the company will not insist on a compliance with the policy provisions." *Continental Ins. Co.* v. *Thornburg,* (1967) 141 Ind. App. 554, 219 N.E.2d 450.

"A waiver or estoppel may result from acts of the insurer causing the insured or claimant under the policy to delay bringing suit until after the time provided for in the policy." 46 C.J.S., *Insurance* § 1264 (1946).

The insurer is not limited to the period contracted for and may choose to pay a claim even though the provision is not complied with. Thus, the inquiry is whether anything has been done in the relationship between the insurer and the insured which would cause the insured to reasonably believe the limitation period will not be insisted upon. *Bowler* v. *Fidelity & Cas. Co.,* (1969) 53 N.J. 313, 250 A.2d 580; *Meekins* v. *Aetna Ins. Co.,* (1950) 231 N.C. 452, 57 S.E.2d 777; *Dishno* v. *Home*

*Mut. Ins. Co.,* (1950) 256 Wis. 448, 41 N.W.2d 375; *Perkins* v. *Cent. Mut. Auto Ins.,* (1934) 269 Mich. 584, 257 N.W. 891.

Requirements of written notice and verified proofs of loss are also valid although easily waived. The standard of waiver is similar to that for limitation periods.

"It is to be observed, that it is the duty of the insurers, pending the consideration of the proofs of loss, to bear themselves with all good faith towards the claimant, and if they are dissatisfied with the proof furnished, and have, or have not, the right to demand further proof before their liability becomes fixed, they ought to make known to the assured the fact and nature of these demands without unnecessary delay." *Aetna Ins. Co.* v. *Shryer,* (1882) 85 Ind. 362; *accord, Home Ins. Co.* v. *Day,* (1929) 90 Ind. App. 128, 168 N.E. 464.

Where the insurer or its agents have formed a relationship with the insured or acted towards him in such a way as to cause the insured to reasonably believe written notice and formal proofs of loss will not be required, the insurer will not be permitted to raise such matters as a defense. Slight acts and circumstances may be sufficient for these purposes. *Ft. Wayne Ins. Co.* v. *Irwin,* (1899) 23 Ind. App. 53, 54 N.E. 817: *Germania Fire Ins. Co.* v. *Stewart,* (1895) 13 Ind. App. 627, 42 N.E. 286.

In this case after the loss was sustained in February, 1970, Mr. Huff gave notification of the loss to Travelers' local agent, from whom Mrs. Huff had purchased the policy. This notification occurred in late February or early March, 1970. The agent told Mr. Huff in reply, to go ahead and get the cost of repairs together and he would process the claim to the company. In May, 1970, Mr. Huff returned with an estimate of the cost of repairs. Mr. Huff thought the estimate high and told the agent he would seek more reasonable repair estimates. From that time until May, 1971, when the agent forwarded a loss report to the company, the two saw each other occasionally, although not on business. Letters were later exchanged with the company. The letters requested further information from

the Huffs and the information was later supplied. And there was evidence showing this was the custom in the community for notification of claims against insurance policies.

*This evidence was sufficient for the jury to find an implied waiver of both the provision limiting the time for suit and the provision requiring formal proofs of loss.* One could reasonably conclude that verified proofs of loss were not being insisted upon and that resort to legal proceedings would not be necessary to collect on the claim. Once notice was given and *no objection was raised to the mode of documentation and liability was not denied* until long after the twelve-month period, then the insurer has waived his right to insist on either provision. To hold otherwise would be to allow an insurer to lull an insured into not pressing his rights and to then deny liability on the basis of the limitation period. It was error to enter a judgment notwithstanding the verdict of the jury on these issues.

## IV. *Vacancy*

The policy of insurance purchased by Huff contained a provision that Travelers would not be liable for any loss occurring while the building was vacant for a period exceeding sixty days. It is undisputed that the building was vacant beyond the sixty-day period, the home being put up for sale after Huffs' daughter moved out in June, 1969. Huffs' previous insurance was canceled because of the vacancy, and they sought other insurance from Travelers while the home was for sale. Huff maintains that Travelers is estopped to assert this provision or impliedly waived it, by the actions of its agent, Mr. Brown. There was evidence that when Huff purchased this insurance, she told Mr. Brown that the home was vacant. This evidence was uncontroverted. Travelers maintains that neither waiver nor estoppel may be used to broaden the scope of coverage of an insurance contract.

Ordinarily, Travelers would be correct that neither the doctrine of implied waiver nor estoppel is available to bring

within the coverage of an insurance policy, risks which are excepted by its terms. *Ky. Cent. Life & Acc. Ins.* v. *White,* (1939) 106 Ind. App. 530, 19 N.E.2d 872, 16A Appleman on Insurance § 9090 (1968). The doctrine has been questioned and overturned in numerous jurisdictions. *Harr* v. *Allstate Ins. Co.,* (1968) 54 N.J. 287, 255 A.2d 208. *United Pacific Ins. Co.* v. *Meyer,* (9th Cir. 1962) 305 F.2d 107; *Ivey* v. *United Nat. Indem. Co.,* (9th Cir. 1958) 259 F.2d 205; *Farmers Mut. Auto Ins. Co.* v. *Bechard,* (S.D. 1963) 122 N.W.2d 86. In this state it is limited in its application, and the doctrine is inapplicable to the present case.

> "This means simply that, by the application of the doctrine of implied waiver or estoppel the policy that provides indemnity for a broken arm could not be broadened so as to cover indemnity for some other injury not covered thereby. . . ." *Travelers Ins. Co.* v. *Eviston,* (1941) 110 Ind. App. 143, 159-61, 37 N.E.2d 310.

A renowned textwriter states the following exception to the doctrine: "[T]he issuance of a policy on an excepted risk would estop the insurer to object that the loss was an excepted one. . . ." 16A Appleman on Insurance § 9090, p. 346 (1968). Similarly, in considering a fire insurance policy which prohibited certain articles from the insured building, our Court of Appeals quoted the following with approval:

> " 'Where such prohibited article is being kept and used on the insured premises at the time of the issuance of such policy and acceptance of the premium therefor, and the insurer knows such fact at that time, it waives the right to declare the policy void on account of such prohibited act.' " *Farmers' Conservative Mut. Ins.* v. *Neddo,* (1941) 111 Ind. App. 1, 40 N.E.2d 401; *accord, Ins. Co. of Pa.* v. *Ind. Reduction Co.,* (1917) 65 Ind. App. 330, 117 N.E. 273; *Globe & Rutgers Fire Ins. Co.* v. *Ind. Reduction Co.,* (1916) 62 Ind. App. 528, 113 N.E. 425.

And in considering a policy which was not to be effective until the insured returned to good health, the court held that the insurer waived that provision of the policy by accept-

ing premiums with the knowledge that the insured was not in good health at the time of issuance. *Pomerenke* v. *Nat. Life & Acc. Co.*, (1968) 143 Ind. App. 472, 241 N.E.2d 390.

An insurance policy is a contract prepared by the insurers with its provisions standardized and formulated for the insurer's benefit and to comport with the insurer's premium rate and actuarial base. The terms of the policy are not generally open to negotiation and because of this the policies are known as "adhesion contracts." Given the complexity of these policies, an insured relies heavily upon his agent and expects that the policy issued to him will conform to his stated desires. From this view the present situation is analogous to that in which an innocent misrepresentation by an agent as to the coverage of the policy precludes the insured from obtaining the desired insurance elsewhere if necessary. In that situation, as in the present, the insurer is estopped from claiming that the risk is excepted.

There was *evidence to support* an estoppel as to the vacancy provision, and it was error on this issue for the trial court to grant judgment for Travelers notwithstanding the verdict.

## V. *Due Diligence*

Another provision of the policy excluded freezing losses occurring while the home was vacant, unless the insured exercised due diligence in maintaining heat in the building or unless the water systems were drained. After first setting out the conflicting evidence regarding due diligence, the trial judge, in his memorandum in support of his order, found the weight of the evidence preponderated against Huff on the issue of whether due diligence had been exercised by the plaintiff:

> "Although the Court does not feel it should grant the defendant company a judgment on the evidence on this ground, it is the opinion of the Court that the verdict of the jury is against the weight of the evidence in this particular and a new trial should be granted for this reason. However in view of the previous rulings, a new trial is not necessary and would be improper."

Huff contends that the trial court did not grant a new trial on this issue since no such grant was contained in its formal order. In addition, Huff contends that the trial court did not prepare sufficient special findings of fact as required by our rules and that the grant of a new trial was improper under these circumstances.

It is apparent that the trial court would have entered an order for a new trial if he had deemed it necessary. He clearly and unambiguously expressed this intention in his memorandum. The fact that he did not enter such a finding in his formal order does not diminish that finding for the purposes of appeal. The contents of a formal order determine the rights of the parties in the controversy, but for the purposes of appeal we may look to the memorandum to determine the trial court's actions. We have similarly held that motions are to be construed together with a supporting memorandum.

Our rules provide that, "[T]he court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence. . . ." The rule further provides:

> "If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. . . . [I]f the decision is found to be against the weight of the evidence, the finding shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; . . . ." Ind. R. Tr. P. 59 (E) (7).

This is in accord with prior law on the granting of a new trial.

The trial judge in determining whether to grant a new trial sits as a "thirteenth juror." He should grant a new trial when, after sifting and weighing the conflicting evidence and the credibility of the witnesses, he believes that a contrary result should have been reached

in the minds of reasonable men. *Bailey* v. *Kain,* (1963) 135 Ind. App. 657, 192 N.E.2d 486. The "trial court's action in granting a new trial is given a *strong* presumption of correctness" on appellate review. *Memorial Hosp.* v. *Scott,* (1973) 261 Ind. 27, 31, 300 N.E.2d 50, 53. The inquiry of an appellate court is to examine the record to determine whether:

(a) The trial court abused its judicial discretion;

(b) A flagrant injustice has been done the appellant; or

(c) A very strong case for relief from the trial court's ordering a new trial has been made by the appellant. *Memorial Hosp.* v. *Scott, supra.*

In this case the trial judge in his memorandum set out the supporting and opposing evidence on the issue of due diligence. He further made the special findings of fact that "no precautions were taken to guard against the furnace failing," and that the plaintiff did not exercise due diligence. Opposing evidence on this defense showed that the furnace was checked by Huff in September, 1969, that provisions were made for the delivery of oil, that the heat was left on for the benefit of the Huffs' real estate broker who agreed to look in on the house, and that another person had volunteered to watch the home.

Conditions requiring that certain precautions be taken against loss are valid and must be complied with in order for the insured to recover under the policy, unless the provision has been waived. *Atlas Assurance Co.* v. *Standard Brick and Tile,* (7th Cir. 1959) 264 F.2d 440. The term due diligence implies that the insured must exercise whatever precautions are reasonably necessary to protect against the risk. Whether the precautions taken by Huff constituted due diligence is a factual question left to the fact finder unless no reasonable man could differ as to the result. Clearly reasonable minds could differ as to whether Huff had exercised due diligence with respect to maintaining heat in the building. Under such circumstances we cannot say that the trial court abused its discretion or that the

appellant has presented a very strong case for relief by way of a new trial from the trial court's determination. The trial court's memorandum adequately supports the grant of a new trial on this issue.

## VI. *Conclusion*

The evidence was in conflict on each justiciable issue presented to the trial court on Travelers' motion for judgment on the evidence. It would appear that the trial court did, in effect, weigh the evidence concerning those issues on which he granted judgment for Travelers notwithstanding the verdict. This was improper and clearly erroneous, *as there was evidence of probative value to support the jury's verdict.* We cannot say that he should have done so, but the trial court could have granted to Travelers a new trial on these issues, as well as on the issue of due diligence, if he found that the weight of the conflicting evidence preponderated against the jury verdict on all issues.

The judgment of the trial court is erroneous for all the foregoing reasons and should be reversed.

Transfer is therefore granted, judgment reversed, and the cause is remanded to the trial court with instructions to vacate its judgment and enter an order for a new trial on all the issues and for further proceedings not inconsistent with this opinion.

Givan, C.J., Prentice, Pivarnik, JJ., concur; DeBruler, J., not participating.

NOTE.—Reported at 363 N.E.2d 985.