**MIDWEST MUTUAL INSURANCE COMPANY, Appellant (Plaintiff Below),**

v.

**INDIANA INSURANCE COMPANY, Appellee (Defendant Below).**

No. 2–478–A–135.

Court of Appeals of Indiana, Second District.

Nov. 3, 1980.

Rehearing Denied Dec. 3, 1980.

Eugene O. Maley and George V. Heins, Smith, Maley & Douglas, Indianapolis, for appellant.

Rick D. Meils, Champion, Hanley, Meils & Zink, Indianapolis, for appellee.

SULLIVAN, Judge.

Midwest Mutual Insurance Company (Midwest) appeals from the trial court's entry of summary judgment in favor of Indiana Insurance Company (Indiana) in Midwest's declaratory judgment action seeking contribution from Indiana.

The facts precipitating suit were as follows. On June 23, 1975, Kevin McCarty, while riding a motorcycle, was injured by a hit and run motorist. Kevin's mother, Ann McCarty, had two separate insurance policies in effect at that time. Under a policy underwritten by Midwest, Ann McCarty was the named insured and the vehicle insured was the motorcycle. A second policy underwritten by Indiana named Ann McCarty as the insured and her Chevy van as the insured vehicle. It is undisputed that Kevin McCarty, due to his status as a relative of the named insured, was also insured under both policies. Both policies contained uninsured motorist provisions. Midwest paid McCarty $3,000 in full satisfaction of the claim.

On appeal the following issues are presented:

1) whether strict compliance with Indiana's notice of claim requirement was waived;

2) whether Indiana's policy covers the accident;

3) whether if coverage exists that coverage is excess only; and

4) whether Midwest is entitled to contribution.

### I.

Ann McCarty's policy with Indiana required the insured or someone on his behalf to file a statement under oath within thirty days of a hit and run accident. The policy also stated that no action shall lie against the company unless the insured fully complies with all the policy's terms. On the basis of these provisions, Indiana asserts that no contractual obligation exists toward Ann McCarty. Indiana claims, "Certainly providing another insurance carrier with this information, if it was provided, is not sufficient compliance with the Indiana policy of insurance." (Appellee Brief 22) We disagree.

■ Requirements of written notice and verified proofs of loss are valid but easily waived. *Huff v. Travelers Indemnity Co.* (1977) 266 Ind. 414, 363 N.E.2d 985. The standard is one of good faith. When the insurer is dissatisfied, it ought to make that known to the insured. So for example in *Huff, supra,* the court reasoned:

"Once notice was given and *no objection was raised to the mode of documentation and liability was not denied* until long after the twelve month period, then the insurer has waived his right to insist on either provision." 363 N.E.2d at 992 (original emphasis).

Similarly, where an agent made no objection to the notice or its form and where he acted upon oral notice, this court held that written notice became an idle formality. The insurance company was estopped to defend upon grounds of lack of written notice. *Hartford Accident & Indemnity Co. v. Armstrong* (1955) 125 Ind.App. 606, 615–16, 127 N.E.2d 347, 351.

■ After the accident in the instant case, Ann McCarty made claim with Midwest for bodily injuries sustained by Kevin. On July 1, 1975 Midwest wrote Indiana about the accident and indicated a desire to settle the claim pro rata between the two insurers. Indiana responded on August 7, 1975. In that letter Indiana requested a copy of the police report and any other relevant information. No mention was made of the thirty day notice provision. It is clear that Indiana did receive actual notice and by its subsequent acts is now estopped from raising such a defense.

### II.

The second issue presented is whether Indiana's policy covers the accident. The hit and run provision in the Indiana policy covers situations where an automobile injures an insured through physical contact with the insured or with an automobile occupied by the insured. Assuming arguendo[1] that Kevin sustained injuries due to "physical contact with an automobile", Indiana maintains that the accident in question was not covered in light of a specific exclusion contained in the policy. The exclusion is as follows:

"Exclusion. This policy does not apply under Part IV;

(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such automobile;"

Midwest argues that such a limitation is void because it conflicts with I.C. 27–7–5–1 (Burns Code Ed. 1975). However, this court

---

1. At one point, Indiana seems to argue that there is no coverage since there must be contact with an automobile, as opposed to a motorcycle, which the insured is occupying. "[T]hus without the existence of an automobile, there was originally no coverage...." (Appellee Brief at 26). However, the hit and run definition is phrased in the disjunctive so as to include accidents where an automobile injures an insured through physical contact with the insured. Certainly, the instant facts can be reasonably characterized so as to fall within that definition.

has previously held that hit and run coverage is not required under the uninsured motorist statute. Accordingly, the courts generally permit the insurer to establish limits on the broader coverage. *Taylor v. American Underwriters, Inc.* (3d Dist. 1976) 170 Ind.App. 148, 154, 352 N.E.2d 86, 91.

■ The provision is one of contract between the parties. The issue becomes one of construction. It is well established that since an insurance contract is drafted by the insurance company, a court is required to construe any ambiguities in such a contract against the insurer. *Farmers Mutual Aid Association v. Williams* (3d Dist. 1979) Ind.App., 386 N.E.2d 950, 952; *Travelers Indemnity Co. v. Armstrong* (3d Dist. 1979) Ind.App., 384 N.E.2d 607, 613. Furthermore, words in an insurance policy should be given their popular and ordinary meaning. *Thompson v. Genis Building Corp.* (3d Dist. 1979) Ind.App., 394 N.E.2d 242, 244. Had Indiana intended to exclude motorcycles owned by the insured but not insured with the company, it could have and should have chosen to use the words "motor vehicle" in the exclusion. Kevin McCarty was riding a motorcycle. He was not occupying an automobile. Under the plain meaning of the exclusion as it was written by Indiana, it is inapplicable to the situation at issue. *Blankenbaker v. Great Central Insurance Co.* (2d Dist. 1972) 151 Ind.App. 693, 281 N.E.2d 496.

### III.

■ Next, Midwest urges that Indiana is liable pro rata. Indiana on the other hand contends that its coverage applies only as excess insurance. The issue can be resolved only be examining the "other insurance" provision in the Indiana policy.[2]

Indiana's "other insurance" provision classified other insurance into two categories. While the insured is occupying an *automobile* not owned by the named insured, any Indiana insurance is deemed excess. In all other circumstances, Indiana shall be liable pro rata. In the situation at bar, the vehicle was not an automobile. Therefore, the very language of the policy dictates pro rata coverage.

Indiana urges that its policy was never intended to cover a motorcycle. Rather, the intent, it is said, was to exclude from coverage situations in which the insured is unwilling to pay a premium on a specific vehicle. We recognize Indiana's desire to emphasize such an intention on the part of the insurer but reiterate our framework for analysis of Issue II (see Part II, *supra*). To paraphrase, had Indiana meant to exclude motorcycles from coverage, it could have and should have included specific language to that effect.

■ Two other arguments are made by Indiana in an attempt to deny coverage. First, Indiana claims that since Midwest provides a similar exclusion in its own contract of insurance, the clean hands doctrine of equity should prevent Midwest from arguing the inapplicability of the Indiana provision. This argument is devoid of substance. Midwest does not use the same language as Indiana. Instead, the provision in the Midwest contract refers to *motor vehicles.*[3] Thus were the same factual situ-

---

**2.** Indiana's reads:

"Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

**3.** Midwest's reads:

"5. OTHER INSURANCE: With respect to bodily injury to an insured while occupying a motor vehicle not owned by the named insured, the insurance under this endorsement

ation to arise, Midwest could point to its provision and legitimately claim that the insured was occupying a *motor vehicle.* Secondly, Indiana points to I.C. 27–7–5–1 (Burns Code Ed. 1975) and maintains that the use of the words "motor vehicle in that statute converts all uninsured motorist policies into motor vehicle policies. The statute reads in part as follows:

> "27–7–5–1 [39–4310]. Motor vehicle liability–Noninsured vehicle coverage–Rejection in writing.–No automobile liability or motor vehicle liability policy or insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Acts 1947, chapter 159, sec. 14 [9–2–1–15], as amended heretofore and hereafter, under policy provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

Indiana has cited no authority for its dubious interpretation of the statute. Accordingly, we deem the issue waived pursuant to Ind. Rules of Procedure, Appellate Rule 8.3. *Tippecanoe County Area Plan Commission v. Sheffield Developers, Inc.* (4th Dist. 1979) Ind.App., 394 N.E.2d 176, 179.

### IV.

In denying Midwest's right to obtain contribution, it is the contention of Indiana that by paying McCarty $3,000 in full satisfaction of the claim, Midwest was a volunteer and not entitled to contribution.

█ It is generally stated that before there can be contribution between insurers they must have insured the same risk and the same interest. *Emmco Insurance Co. v. Indiana Farmers Mutual Co.* (1972) 152 Ind. App. 212, 283 N.E.2d 404. "[T]hat is, the insurance must have been on the same interest and the same property or a similar part thereof." 46 C.J.S. *Insurance* § 1207, at p. 151 (1946). In the *Emmco* case, a combine was destroyed by fire. The owners of the combine had an insurance policy covering their farm equipment. An investment company also had an insurance policy to protect the unpaid amount of loans made by that company to the combine owners. Our court held that contribution between insurers would not be required there since the interests covered by the two policies were separate and distinct. In the instant case, both insurers agreed to compensate the insured for bodily injuries attributable to hit and run accidents. Consequently, it may be said that the same risk was involved, i. e., the risk of injury by a hit and run driver, and that the same interest existed, i. e., damages for bodily injury sustained by the insured.

█ As heretofore noted, the Midwest policy created a contractual obligation between it and McCarty. That obligation required Midwest to pay "*all* sums which [McCarty] shall be legally entitled to recover as damages . . ." (emphasis supplied). Indiana, however, relies upon *Farm Bureau Mutual Automobile Insurance Co. v. Buckeye Union Casualty Co.* (1946) 147 Ohio St. 79, 67 N.E.2d 906, which held that an insur-

shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such motor vehicle as primary insurance, and this insurance shall apply only in the amount by which the limit of liability for this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insur-

ance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limits of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

er is not liable to the insured for the full amount of the claim if as between another insurer, each company is liable for a proportionate amount of the loss.

We have above held that the policies in question provide for pro rata liability. We decline, however, to follow the Ohio case. The better reasoned authority is otherwise.

Midwest makes a persuasive argument when it says:

"The insurer who recognizes an obligation to the insured should not be faced with a forfeiture of its rights as its reward. To do otherwise would be to encourage the insurance carriers to litigate all questionable claims among themselves, thus leaving the insured in a position where he effectively has no coverage available."

As stated in 8 Appleman, *Insurance Law & Practice* § 4913 at 397–98 (1962 ed.) (footnotes omitted):

"Thus, if a policy contains a coinsurance clause limiting the insurer's liability to its pro rata share of a loss, an insurer paying the full amount of a loss has been held in early cases to be a mere volunteer as to the excess, and not entitled to contribution from the insurer which denied liability. However, subrogation rights have been held enforceable. And an insurer possessing such rights is not a volunteer in making payment in the first instance.[4] The majority of cases now recognize the undesirability of rewarding the insurer which refuses to honor its contractual obligations, and hold that payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer, not entitled to recover."

The considerations supporting the position we take here were well stated in *St. Paul Fire & Marine Insurance Co. v. Allstate Insurance Co.* (1975) 25 Ariz.App. 309, 312, 543 P.2d 147, 150:

"We believe it is sound public policy to encourage insurance companies to make a

swift settlement of claims. It would also be against public policy to force an insured, who has coverage under more than one policy, to institute legal action to collect payment for the loss in cases where a dispute arises between the insurance carriers over their respective liabilities under the policies."

As an additional argument for denying Midwest the right of contribution, Indiana asserts that because Midwest charged a higher premium for its policy on the motorcycle than did Indiana for its policy on the Chevrolet van, Midwest should be denied the right of contribution upon equitable grounds. Indiana asserts that to permit contribution is to unjustly enrich Midwest. We reject this argument. The policy provisions interpreted here are not ambiguous. The coverage afforded by both policies results in pro rata liability for the loss. The questions decided here are largely those of language interpretation and application of the existing law to the clear words of the contracts. The amount of the premium paid by McCarty to Midwest does not and cannot affect Indiana's duty to contribute under the provisions of Indiana's policy with McCarty.

The judgment is reversed and the cause is remanded for further proceedings consistent herewith.

BUCHANAN, C. J., and SHIELDS, J., concur.

---

**4.** It may be noted, although not specifically argued in the case before us, that in consideration of Midwest's settlement, both McCartys executed a full release to Midwest and subrogated Midwest to any claims by them against Indiana.