**Frederick J. FRANTZ, Appellant (Plaintiff Below),**

v.

**COMMUNITY HOSPITAL, INC. and M. R. Schmoyer, M.D., Appellees (Defendant Below).**

No. 2–979A299.

Court of Appeals of Indiana, Fourth District.

Nov. 10, 1980.

Frederick J. Frantz, pro se.

James V. Donadio, Margaret Attridge, Indianapolis, for appellees.

MILLER, Judge.

Frederick J. Frantz appeals a directed verdict rendered against him in his hospital and physician malpractice action brought against Community Hospital of Indianapolis, Inc., and Dr. M. R. Schmoyer, M. D. Dr. Schmoyer was a pathologist at the hospital and also Director of Laboratories at the time Frantz underwent lung surgery. We affirm the judgment for the defendants.

Frantz commenced this action on December 9, 1974 by filing his *pro se* complaint which, omitting the introductory sentence, reads as follows:

"1. Defendants are a practicing Hospital and Pathologist in Marion County, Indiana, and all events described hereinafter took place in Marion County, Indiana.

2. Plaintiff went to this Hospital for a chest x–ray and medical advice as made fully described hereinafter.

3. On October 4, 1972 [1] Plaintiff went to Community for a chest x–ray, and was informed by hospital personnel that this was a negative x–ray at approximately 11:00 a. m. in the morning. At 2:00 p. m. in the afternoon, Plaintiff was informed that a mistake had been made and that he would have to enter the Hospital for more x–rays.

4. Consequently, Plaintiff was operated on by Paul F. Benedict, M.D. [who states under Oath in his deposition that he did a lobectomy and did remove the upper lobe right lung with a 2CM lesion of unknown origin. Since all lab texts were within normal range and no one knew where the lesion came from.] [2]

5. [After discussing this with another Pathologist from a different hospital.] Plaintiff finds that it was imperative that a biopsy be run on the remaining tissue of the upper lobe this was not done by M. R. Schmoyer, M.D. Pathologist Community Hospital.

6. Plaintiff further contends that the upper lobe right lung was not removed from his chest, that 2 CM of good lung tissue was removed from his lung and that M.R. Schmoyer did falsify his Pathology report to cover up the deception of Paul F. Benedict, M.D. and R.J. Yingling, M.D.

7. Plaintiff states that an examination of the Post Operative X–Rays by a radiologist will prove that the upper lobe right lung is still in his chest.

[8. Plaintiff has already charged R.J. Yingling with falsifying his radiology report, and Paul F. Benedict with performing unnecessary surgery to earn a fee.]

9. Plaintiff says that Community Hospital has not released the questionable x–rays to be read by an unbiased Radiologist because there is nothing in these x–rays to confirm R.J. Yingling diagnosis, and therefore it is necessary to bring this action.

10. The injury was sustained in Community Hospital Operating Room caused by negligence of Staff Physicians.

11. As a direct result of the aforesaid unnecessary surgery, Plaintiff was disabled for a period of nine months from performing his usual and customary work or his self–employment occupation of installing air conditioners and lost income therefrom in the total amount of Three thousand dollars ($3,000.00).

12. As a direct result of the unnecessary surgery performed on Plaintiff in Community Hospital and the cover up that followed. Plaintiff has suffered for the last 2 years, and can reasonably be expected to suffer for the rest of his life. Constant pain and discomfort in his right chest which pain and discomfort is aggravated by Plaintiffs normal employment and home activities which require movement of the upper torso.

WHEREFORE, Plaintiff prays judgement [sic] against the defendants jointly and each of them severally, in the sum of (Seven Hundred and Fifty Thousand Dollars) $750,000, and Plaintiff hereby requests that this cause is tried by jury."

Upon the defendants' initial motion for summary judgment and the submission of affidavits by each of the parties, the trial court first gave a judgment in this action for the defendants on July 21, 1976. Thereafter, that summary judgment was reversed by this Court, in an unreported memorandum opinion [3] handed down June 27, 1978, for the reason that we could not conclude, without weighing the credibility of one affiant against the other, that there was no genuine issue of material fact presented. Accordingly, the cause was remanded.

The instant appeal, by contrast, is from a later directed verdict entered for defendants following three days of trial at which there were numerous witnesses and exhib-

---

1. This date was later amended to read December 4, 1972.

2. The bracketed words appearing in our recitation of Frantz's complaint represent language

which was subsequently stricken by the trial court.

3. *See* Ind. Rules of Procedure, Appellate Rule 15(A).

its, the latter consisting mainly of medical records. Having heard and seen all of such evidence, the trial court determined at the close of Frantz's case that he had failed to sustain his burden of proof as to the material allegations made in his complaint.

■ In reviewing such judgment, we first observe the general standard pertaining to directed verdicts, which is that a judgment on the evidence is proper whenever there is no substantial evidence (or reasonable inference to be adduced therefrom) to support an essential element of the claim, despite the fact that some of the evidence presented may be in conflict. *Revord v. Russell*, (1980) Ind.App., 401 N.E.2d 763, 766, *citing Huff v. Traveler's Indemnity Co., Inc.*, (1977) 266 Ind. 414, 363 N.E.2d 985, 990; and Ind. Rules of Procedure, Trial Rule 50.

In applying such standard to the instant action, we must first consider the general factual background giving rise to Frantz's complaint. According to Frantz's own assertions and other essentially uncontroverted evidence elicited at trial, the pattern of events began when routine chest x–rays at his place of employment appeared to reveal irregularities in the upper lobe of Frantz's right lung. Thereafter, at the suggestion of a friend, he visited one Dr. Benedict, who was not a party to this action but was called as a witness by Frantz. Apparently pursuant to Dr. Benedict's recommendation, Frantz entered Community Hospital on December 4 for tests. During his stay at that hospital he underwent various diagnostic procedures, including the use of sophisticated x–rays known as tomograms conducted by the radiology department, as well as a bronchoscopy apparently administered by Dr. Benedict. According to Dr. Benedict, although Frantz disagrees, the tests at the time indicated surgery was necessary in order to rule out the possibility of cancer. Accordingly, Dr. Benedict stated that on December 11 he surgically removed the up-

per right lobe of Frantz's lung, that procedure being more advisable under the medical circumstances than simply removing a section of the lobe. Frantz contends, by contrast, that the entire lobe was not removed. Both parties apparently agree, however, that some tissue was extracted.[4] Dr. Benedict and Dr. Schmoyer testified that after the lobe was removed, but before Frantz's chest was closed, a "frozen section" of such tissue was examined by Dr. Schmoyer in the hospital's laboratory and found to be non–malignant. Accordingly, Frantz's chest was closed and the operation was completed. Dr. Schmoyer indicated that subsequent tests on the tissue confirmed his initial diagnosis.

Frantz does not quarrel with such diagnosis so far as the determination of non–malignancy is concerned. Rather, although the precise nature of his argument is unclear, he apparently contends in essence that the surgery which was undertaken was unnecessary and initiated by "false" hospital radiology reports, that in fact his entire upper lobe was not removed but that Dr. Schmoyer falsified his test results to make it appear that way, that Dr. Schmoyer did not perform adequate tests, and that Dr. Schmoyer owed a duty after the operation to conduct a biopsy which was never done. Accordingly, he concludes that the defendants "did not use that average reasonable care and skill as generally exercised by other hospitals and other pathologists in rendering hospital care and pathological services in this area or similar localities."

■ In response to such arguments, we note that in the instant case, as in *Revord v. Russell, supra,* where there was a judgment on the evidence against the plaintiff, Frantz offered no expert medical testimony tending to support his malpractice allegations. Such evidence is essential since we believe that lung surgery and the interpretation of chest x–rays, much like the questions of brain surgery presented in *Revord,*

---

4. Although Frantz acknowledges in his complaint and in his brief that "two centimeters of good lung tissue" were removed, we observe that he elsewhere contends Dr. Schmoyer was not actually supplied with any specimen, apparently because he believed none was in fact taken from his body.

are "not ... matter[s] within the common knowledge or experience of laymen" and, therefore, "medical testimony was required... to establish a prima facie case...." *Id.*, 401 N.E.2d at 767. Thus, while Frantz solicited the testimony of a variety of physicians and other witnesses associated with the treatment of his lung condition, none of these sources offered the opinion that the care he received was inadequate. Rather, the opinion evidence which was presented tended to go the other direction. Thus, there was testimony from Dr. Isabelle Buehl, for example, who is a pathologist and an Indiana University medical professor, who stated she had reviewed Frantz's medical records and slides of his lung tissue and had thereby concluded that the pathological interpretation given by Dr. Schmoyer was a correct one. She further stated that the duty of a pathologist, in general, is merely to appropriately examine the tissue he is given by a surgeon, and that such examination normally anticipates no relationship with the patient himself,[5] nor does it involve doing biopsies in cases presenting lung conditions such as Frantz's. Dr. Benedict agreed with this latter conclusion.

While it is true, we believe, that a plaintiff may in certain circumstances prove (as Frantz alleges) without expert testimony that tests and test results were *falsified*, Frantz presents no appropriate evidence in the instant case nor any evidence which does not require professional interpretation. Thus, while Frantz attempts to rely on the testimony of Dr. Edward Cockerill, a radiologist, to conclude that Dr. Schmoyer's report was made in "bad faith" and that in fact Dr. Schmoyer received no lung specimen, this Court is unable to agree. Without a professional opinion, we cannot draw such a conclusion from Dr. Cockerill's assertion that the existing lung "fills the right chest ... completely." Indeed, that doctor's avowed opinion was that the x–rays he observed were "consistent with a portion of the right lung having been removed." He further asserted, in explaining his comments, that when a portion of lung is removed, the remaining tissue tends to fill up the hole which results, because "[t]he body does not like a space." We conclude, in the absence of appropriate evidence to the contrary, that Frantz's allegations against Schmoyer must fail, as must any derivative liability which the hospital could possibly be subject to on his account.

Although Frantz also argues, more generally, that the evidence tends to show he did not receive adequate "nursing and hospital care," we similarly conclude, with the trial court, that he did not meet his burden on these issues. The precise nature of his argument is unclear, since he argues in his brief merely that "[t]he hospital is responsible for the safety of its patients and the conduct of its employees," including "mis–use" of facilities. Absent a more cogent argument, this Court cannot evaluate the merits of Frantz's contentions. Even assuming *arguendo* the possible liability of the hospital for the acts of its agents or employees,[6] we again note, as we did in the case of Dr. Schmoyer, that there was no expert evidence, or indeed any evidence apart from Frantz's own allegations, suggesting any "mis–use" of facilities or that his treatment was inadequate.

We acknowledge Frantz's suggestion in his complaint and at trial that Dr. Robert Yingling, staff radiologist at Community Hospital, either falsified or negligently prepared the radiology report which apparently led to Dr. Benedict's exploratory surgery. We find no evidence in the record cognizable by this Court, however, tending to sup-

---

**5.** Frantz acknowledged in the instant case that he did not have any conversation with Dr. Schmoyer during his hospitalization, and indeed had never seen him until filing his law suit.

**6.** We also note, in considering the hospital's liability, that Frantz acknowledged at the commencement of the trial that he was not claiming Dr. Benedict, the physician who performed his operation, was a hospital employee. Dr. Benedict testified that neither Dr. Schmoyer nor any Community Hospital employee entered into deciding whether or not to perform the surgery or how to conduct it.

port such accusations.[7] Rather, as in the case of Dr. Schmoyer's alleged falsification, the testimony which was presented at least appeared to confirm Dr. Yingling's conclusions. He stated in a report dated December 5, 1972 interpreting tomograms of the upper lungs, that there was "a small area of increased density which seems to contain a central area of radiolucency suggesting strongly a cavitary lesion in the right apex." Were this Court to undertake, as Frantz suggests, to evaluate such medical findings we would necessarily acknowledge the apparent similarity of Dr. Cockerill's conclusion at trial, after he viewed tomogram exhibits dated December 5, that "there was a soft tissue density the same as muscle in the apex of the right upper lobe" representing an "abnormal" condition.

In conclusion, although we believe this Court has given due consideration to the fact that Frantz has represented himself in the trial of this matter as well as on appeal, with the result that his arguments lacked some specificity, we conclude the directed verdict in favor of the defendants should be affirmed in light of Frantz's failure to present appropriate evidence in the trial court.

YOUNG, P. J., and CHIPMAN, J., concur.

---

7. Although Frantz's complaint also makes reference to a "mistake" in his initial x–rays, he similarly failed to establish any such error constituting a breach of due care. Thus he failed to present evidence on this threshold question of negligence. Even assuming *arguendo*, however, that it may have been negligent for the hospital to issue one x–ray report at 11 a. m. and a corrected report at 2 p. m. the same day, we believe under the circumstances of this case that any injury suffered (though Frantz alleges none in particular) would be de minimis.