John W. BOSSARD, M.D.,
Defendant-Appellant,

v.

James M. McCUE and Patricia L.
McCue, Plaintiffs-Appellees.

No. 3–1080A325.

Court of Appeals of Indiana,
Third District.

Sept. 17, 1981.

Rehearing Denied Nov. 3, 1981.

John F. Lyons, William F. McNagny, James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, for defendant-appellant.

Ronald L. Sowers, M. Robert Benson, Mark S. Pantello, Sowers & Benson, Fort Wayne, for plaintiffs-appellees.

HOFFMAN, Presiding Judge.

John W. Bossard, M.D. appeals the trial court's order for a new trial after a verdict in his favor was returned in a medical malpractice action. The issues raised are:

(1) whether the trial court erred in failing to disqualify itself from ruling on post-trial motions;

(2) whether the trial court erred in failing to enter judgment on the verdict prior to ordering a new trial;

(3) whether the trial court erred in failing to comply with Ind. Rules of Procedure, Trial Rule 59; and

(4) whether the trial court erred in ordering a new trial.

James McCue was referred by his family physician to Dr. Bossard, a neurosurgeon, in 1975 for treatment for pain in McCue's left leg and hip. Dr. Bossard took a medical history and examined McCue before concluding that he had a ruptured lumbar disc. McCue was sent to a hospital for treatment.

While McCue was in the hospital, x rays and a myelogram were taken to confirm Dr. Bossard's diagnosis. These tests revealed nothing abnormal in McCue's back. McCue was initially put in traction, but when this failed to relieve the pain he agreed to undergo an exploratory surgery performed by Dr. Bossard.

Dr. Bossard testified that his surgery report included findings of ruptured, degenerated, fourth lumbar intervertebral disc and severe lumbar spondylosis at the fourth lumbar interspace on the left, severe nerve root entrapment at the fourth lumbar interspace on the left causing severe left sciatic and femoral radiculitis. Other findings included: extreme stenosis, or narrowing at the fourth lumbar interspace on the left causing severe nerve root compression of the nerve roots at the fourth lumbar interspace on the left; ruptured and degenerated fourth lumbar intervertebral presenting in the mid-line and extending across the mid-line far out into the foramina at the fourth lumbar interspace on the left; a large osteoarthritic ridge underneath the ruptured disc extending across the mid-line and far out into the interval foramina at the fourth lumbar interspace on the left; a large osteoarthritic spur presenting on the facet joint anteriorly into the interval foramina at the fourth lumbar interspace on the left; changes of lumbar spondylosis and osteoarthritis in the facet joint at the third and fifth lumbar interspace on the left.

After the surgery McCue complained of severe pain in his back and lower extremities. Tests revealed a lack of sensation in McCue's legs. McCue later developed aortic thrombosis which caused weakness, numbness and pain down his legs along with ulcers on his feet and ankles. Dr. Bossard referred McCue to Dr. Lloyd, a vascular surgeon, who determined by way of an arteriogram that McCue was suffering from a blockage of the aorta causing a vascular insufficiency to his lower extremities. Shortly thereafter Dr. Lloyd performed a by-pass operation to restore circulation to McCue's lower extremities.

McCue also developed a drainage from the incision in his back. This drainage later showed that McCue's back had become infected. McCue underwent surgery to remove the infectious back tissue.

McCue is presently totally disabled. He also suffers pain in his lower extremities.

McCue and his wife Patricia filed a medical malpractice action against Dr. Bossard alleging that Dr. Bossard was negligent in his diagnosis and treatment of McCue. The McCues also alleged that Dr. Bossard negligently misrepresented McCue's true condition and induced him to undergo unnecessary surgery for a back disorder which damaged the nerves in McCue's back. Finally, the McCues alleged that Dr. Bossard was negligent in his post-surgical care of McCue, including the failure to adequately care for the back infection.

After an eight-day trial the jury returned a verdict in favor of Dr. Bossard. Apparently judgment was never entered on this verdict. Dr. Bossard filed an application for change of venue from the judge based upon certain comments made by the judge in his chambers after the jury had begun to deliberate. Four days later, the McCues filed a motion for judgment on the evidence and a motion to correct errors. The trial court found that the verdict was against the weight of the evidence and ordered a new trial pursuant to TR. 59(I)(7) (now TR.

59(J)(7)). The trial court summarized the evidence and made special findings. The trial court also retained jurisdiction to rule on the motion to correct errors but granted the motion for change of judge with regard to all subsequent proceedings.

Dr. Bossard initially contends that the trial judge should have disqualified himself from ruling on post-trial motions because of bias and prejudice against Dr. Bossard. As evidence of the bias and prejudice Dr. Bossard refers this Court to comments which the trial judge made in his chambers while the jury deliberated and in court when the jury returned its verdict.

■ It is essential to keep in mind when the judge's remarks were made. Unlike *Brokus v. Brokus* (1981), Ind.App., 420 N.E.2d 1242 where the trial judge made comments evidencing bias prior to presentation of any evidence, the comments in the present case were made after all the evidence had been presented and the jury had retired to deliberate. Contrary to Dr. Bossard's assertion that the remarks evidence a prejudice, it is apparent that the trial judge was reacting to the evidence. Such reactions are in accordance with the trial judge's role as the "thirteenth juror." The functions of a trial judge when acting as the "thirteenth juror" were summarized by Justice Hunter in *Bailey v. Kain* (1963), 135 Ind.App. 657, at 663–664, 192 N.E.2d 486, at 488–489:

> "The trial judge is more than a mere umpire; his duties extend beyond the bounds of confining the evidence to the issues and instructing the jury on the law of the case; it was his duty to hear the case along with the jury; he had the opportunity to see and know the jury; he had the duty to observe the witnesses and note the level of their intelligence and wisdom together with their independence or lack of it, their prejudice or lack of it concerning matters about which they testified, and to note their bias or prejudice, their interest or lack of interest. In short, it was *his duty to keep his eyes and ears open to what was going on during the trial* so that when confronted with a

motion for a new trial, he could pass upon the purely legal questions involved in the case, as well as determine the weight and sufficiency of the evidence to sustain the verdict. There are many things the trial judge must take in consideration in determining the weight of conflicting evidence and passing upon the question of the preponderance thereof which make his duty in the first instance entirely different from that of an appellate tribunal as a court of review, for at the appellate level we have only the record and briefs exemplified by the cold type before us. *Hinds, Executor, etc. v. McNair et al.* [(1955), 235 Ind. 34, 129 N.E.2d 553], *supra*, and cases cited." (Original Emphasis.) (Footnotes omitted.)

Viewed from this perspective, the trial judge's comments do not establish bias and prejudice. In the future however, trial judges should refrain from making, and attorneys should avoid inviting, such comments in conversations had while a jury is deliberating.

■ Dr. Bossard next asserts as error the trial court's failure to enter judgment on the verdict in accordance with Ind. Rules of Procedure, Trial Rule 58. Dr. Bossard appears to argue that a trial court cannot order a new trial under TR. 59(I)(7) prior to the entry of a judgment.

Trial Rule 59(I)(7) provided:

"(I) Relief granted on motion to correct error. The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors:

\*     \*     \*     \*     \*     \*

(7) *In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence*; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous

as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.

In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. *When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted.* Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence." (Emphasis added.)

The rule does not require that a judgment be entered prior to an order for a new trial, but rather, directs the trial court to grant a new trial if the "verdict of a non-advisory jury is against the weight of the evidence." No purpose would be served by requiring a trial judge to enter judgment on a jury's verdict prior to ordering a new trial on the grounds that the verdict is against the weight of the evidence.

■ Dr. Bossard next challenges the trial court's compliance with TR. 59(I)(7). In particular, Dr. Bossard contends that the trial court did not adequately set out the evidence in his favor. Dr. Bossard also challenges the trial court's finding regarding proximate cause. Finally, Dr. Bossard argues that the trial court erred in ordering a new trial on the basis that the verdict was not in accord with the evidence.

The trial court obviously determined that the evidence in the case was conflicting. If the trial court had determined that the jury's verdict was clearly erroneous it would have been required by TR. 59 to enter judgment in favor of McCue. A review of the trial court's summary of the evidence also reveals that the evidence is conflicting.

In its summary of the evidence, the trial court noted that Dr. John Conley testified that Dr. Bossard did a "good job." The court also summarized the testimony of the other expert witnesses. This summary essentially consisted of the opinions of the expert witnesses. The McCues' expert witnesses, for the most part, concluded, based on the totality of the circumstances, that Dr. Bossard's diagnosis, care and treatment of McCue fell below the minimum acceptable standards of medical care. The trial court, in its findings regarding damages, indicated that although two expert witnesses testified that McCue's present total disability was due entirely to Dr. Bossard's surgery, that there was also evidence that McCue's circulatory problems were at least a contributory cause to his present situation. From this finding it can be concluded that the trial court also considered Dr. Bossard's treatment as a cause of McCue's damages.

Dr. Bossard argues that the trial court ignored evidence in his favor. In his brief Dr. Bossard refers this Court to instances where there existed contradictions and disagreements in the testimony of the McCues' expert witnesses. Dr. Bossard fails to recognize however that these contradictions and disagreements go to the weight of the evidence and the credibility of the opinions rendered by the expert witnesses. These are factors to be considered by the trial

court in its role as a "thirteenth juror" and not by this Court on appeal. The crucial evidence was the experts' opinions of the care and treatment rendered by Dr. Bossard. These were adequately summarized by the trial court. The findings of the trial court are therefore sufficient to comply with TR. 59(I)(7).

This Court's standard in reviewing a grant of a new trial pursuant to TR. 59(I)(7) was established in *Memorial Hospital v. Scott et al.* (1973), 261 Ind. 27, at 33, 300 N.E.2d 50, at 54:

"The sole duty of an appellate court is to examine the record to see if:

(a) The trial court abused its judicial discretion;

(b) A flagrant injustice has been done the appellant; or

(c) A very strong case for relief from the trial court's ordering a new trial has been made by the appellant."

*See also: Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985; *Nissen Co. v. Terre Haute First Nat'l. Bk., Gdn. et al.* (1976), 265 Ind. 457, 358 N.E.2d 974. A "trial court's action in granting a new judgment is given a strong presumption of correctness." *Huff v. Travelers Indemnity Co., supra,* 266 Ind. at 429, 363 N.E.2d at 994 citing *Memorial Hospital v. Scott, supra,* 261 Ind. at 31–32, 300 N.E.2d at 53.

■ This Court has reviewed the record carefully. As determined previously, the trial court's findings adequately set out the supporting and opposing evidence. Dr. Bossard has failed to show that the trial judge abused his discretion. Additionally, it does not appear that a flagrant injustice has been done nor has Dr. Bossard presented a strong case for relief from the trial court's granting a new trial. The trial court did not err in its order.

■ The McCues have preserved one issue for review on appeal. That issue is whether the trial court erred in failing to grant their motion for judgment on the evidence which was filed after the return of the jury verdict.

In *Johnson v. Bender* (1977), Ind.App., 369 N.E.2d 936, at 938, this Court held:

"The standard to be employed by the trial court when considering a motion for judgment on the evidence subsequent to the jury's verdict is the same standard which applies to a motion for judgment on the evidence made at the conclusion of the evidence. The trial court must view only the evidence favorable to the non-moving party and the reasonable inferences to be drawn therefrom and may enter judgment only if there is no substantial evidence or reasonable inference to be adduced from the evidence to support an essential element of the claim. In determining whether to enter judgment contrary to the verdict, the trial court may not weigh the evidence. If the trial court is convinced that the weight of conflicting evidence preponderates against the jury's verdict, it should order a new trial. *Huff v. Travelers Indem. Co.* (1977), Ind., 363 N.E.2d 985."

As noted previously, the evidence is conflicting on the issues of the adequacy of Dr. Bossard's care and treatment and proximate cause. The trial court therefore did not err in denying the motion for judgment on the evidence.

For the foregoing reasons the order of the trial court granting a new trial is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.